IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| **KIMBERLY HAGUE,** | * |
| Plaintiff, | * |
| v. | *  Civil Case No. SAG-25-01278 |
| **DAVID STEINER,** | * |
| Defendant. | * |

**MEMORANDUM OPINION**

Kimberly Hague ("Plaintiff") filed this action against the Postmaster General of the United States, David Steiner[1], ("Defendant"), alleging employment discrimination and retaliation. ECF 1. Defendant filed a motion to dismiss two counts of the complaint, ECF 13, Plaintiff opposed the motion, ECF 17, and Defendants filed a reply, ECF 22. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons stated below, Defendant's motion to dismiss will be granted and Counts Two and Three of the complaint will be dismissed without prejudice, although Count One will proceed to discovery.

I.  **FACTUAL BACKGROUND**

The facts described herein are derived from Plaintiff's Complaint and are taken as true for purposes of this motion. Plaintiff began working for the United States Postal Service ("USPS") in November of 2019. ECF 1 ¶ 7. She became a Flex Clerk at the Rock Hall Post Office in June of 2020. *Id.* ¶ 8. In November, 2021, Richard Nickerson became the Postmaster of Rock Hall. *Id.*

---

[1] Plaintiff's Complaint also names other federal officials, along with the Former Postmaster General. ECF 1. Plaintiff now concedes that the other officials should be dismissed, ECF 17-1 at 1 n.1. The Clerk will be directed to substitute David Steiner for Louis DeJoy and to dismiss the remaining named defendants.

¶ 11. Nickerson has more than 20 years of experience but had been the subject of "several gender-based discrimination claims by his female subordinates." *Id.* ¶¶ 12, 14.

When Nickerson transferred to Rock Hall, he immediately began mistreating Plaintiff and her two female co-workers, who were mail carriers. *Id.* ¶¶ 16–17. In particular, Nickerson walked around the office with his pants drooping, exposing his bare buttocks. *Id.* ¶ 19. Plaintiff repeatedly asked him to pull up his pants, but Nickerson generally refused and, on one occasion, leaned over Plaintiff so that she could see his penis before he pulled up his pants. *Id.* ¶¶ 20–22.

Nickerson also routinely berated Plaintiff, including with the use of profanity. *Id.* ¶ 23. He also intentionally walked past her down a narrow hallway so that he could press his body against Plaintiff's to get by. *Id.* ¶ 24. Nickerson also insisted that Plaintiff contribute her own money to the cash draw if it was short, in violation of USPS policy. *Id.* ¶ 25. He repeatedly made reference to a woman's "place in the world" and suggested that men "make[] the rules." *Id.* ¶ 27.

As a result of this mistreatment, Plaintiff began seeing a mental health counselor for anxiety and depression. *Id.* ¶ 28. Nickerson would deny her requests for time off to see her counselor and would insist to see her doctor's notes, which he would then leave openly exposed on his desk. *Id.* ¶ 29.

In August, 2022, one of the female mail carriers retired. *Id.* ¶ 30. Nickerson hired a male replacement, and he did not yell and curse at the male carrier like he did with Plaintiff and her female co-worker. *Id.* ¶ 31.

Plaintiff complained to a USPS Manager of Post Office Operations ("MPOO"), but no corrective action ensued. *Id.* ¶¶ 32–38. In March, 2023, Plaintiff contacted USPS's EEO Office to make a formal complaint. *Id.* ¶ 39. However, on April 8, 2023, an EEO representative told her "the

2

only thing that would happen is a conversation" with Nickerson and encouraged Plaintiff to close her case. *Id.* ¶ 40. She did. *Id.*

In the spring of 2023, Plaintiff again tried to complain to a new MPOO but again received no assistance. *Id.* ¶¶ 41–43. In February, 2024, Nickerson began calling Plaintiff on her cellphone while standing in close proximity, and then glaring at her without saying anything. *Id.* ¶ 45. He also began pressing his body against Plaintiff's at the cash register and breathing on her neck. *Id.* ¶ 46. He continued to curse and use profanity towards Plaintiff, including in front of a customer. *Id.* ¶ 47.

On April 8, 2024, Plaintiff initiated a second complaint to the EEO Office, and she subsequently also emailed USPS management to complain about discrimination and harassment. *Id.* ¶¶ 48–49. On April 18, 2024, USPS placed Nickerson on paid leave while it investigated his loss of USPS property. *Id.* ¶¶ 50–51. During Nickerson's leave, he repeatedly drove past the Rock Hall Post office and Plaintiff's home, which was on a dead-end street. *Id.* ¶ 53.

Plaintiff formalized her EEO complaint on June 18, 2024. *Id.* ¶ 54. However, on July 16, 2024, the agency dismissed the complaint, erroneously finding that it consisted only of two claims. *Id.* ¶ 55. Four days later, Plaintiff learned from her co-worker that Nickerson would be returning to work from his administrative leave. *Id.* ¶ 56. Plaintiff then emailed the then-Postmaster General to outline her claims of discrimination, sexual harassment, and retaliation. *Id.* ¶ 57. She received no response. *Id.* ¶ 58.

Plaintiff sought medical attention for a panic attack she suffered at the thought of working with Nickerson again. *Id.* ¶ 59. The physician restricted her from work for one week. *Id.* ¶ 60. The MPOO contacted Plaintiff to discuss the work restriction, declined to transfer Nickerson to another office, but offered to transfer Plaintiff to another office until USPS got it "straightened out." *Id.*

¶¶ 41, 61–62. Plaintiff agreed to a temporary transfer to the Chestertown Post Office. *Id.* ¶ 63. At that office, however, Plaintiff's hours were changed, and her new supervisor attempted to discipline her for actions or omissions of others. *Id.* ¶¶ 64, 66. Nickerson also called the Chestertown Post Office every day. *Id.* ¶ 65. Because Plaintiff's mental health conditions worsened, her physician "restricted her work schedule." *Id.* ¶ 67. Her supervisor refused to accept the work restrictions, and her physician ultimately restricted Plaintiff from working at USPS altogether, beginning in August of 2024. *Id.* ¶¶ 68–69. She has remained on unpaid leave since that time. *Id.* ¶¶ 70–71. Nickerson has continued to drive past her home repeatedly. *Id.* ¶ 71.

Plaintiff filed the instant action on April 21, 2025, asserting claims for hostile work environment/harassment (Count One), constructive discharge (Count Two), and retaliation (Count Three). *See generally id.*

## II. LEGAL STANDARDS

Defendant argues that Counts Two and Three are subject to dismissal for failure to state a claim. Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendants with "fair notice" of the

claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is

5

met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

III. **ANALYSIS**

   A.   **Constructive Discharge (Count Two)**

In Count Two, Plaintiff claims constructive discharge, which requires her to allege facts to plausibly establish that her "working conditions [became] so intolerable that a reasonable person in [her] position would have felt compelled to resign." *Green v. Brennan*, 578 U.S. 547, 555 (2016) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004)). The Supreme Court has explained that "a constructive discharge claim accrues . . . when the employee gives notice of his resignation." *Id.* at 564.

Plaintiff's claim, then, tries to fit a square peg into a round hole. This Court need not decide whether she has adequately alleged intolerable working conditions or whether a reasonable person would have felt compelled to resign in her circumstances, because no constructive discharge claim has yet accrued. Plaintiff remains employed by USPS, despite her unpaid leave status. And Plaintiff offers no authority to suggest that a constructive discharge claim is viable when the complainant remains employed. As a result, her allegations are properly addressed via her Count One claim for hostile work environment and harassment, not through a claim for constructive discharge. Her Count Two claim must be dismissed.

   B.   **Retaliation (Count Three)**

Count Three alleges retaliation. Plaintiff has not alleged any facts suggesting direct evidence of retaliation, such as statements made regarding an intent to retaliate against her for her

6

various complaints and charges. Instead, she contends that she made "a series" of complaints about discrimination and harassment that resulted in USPS "taking a series of adverse employment actions, including, but not limited to, extreme verbal abuse, transferring [Plaintiff] to less desirable position, and constructively discharging [Plaintiff]." ECF 1 ¶¶ 83–84.

There can be no doubt that Plaintiff engaged in protected activity on multiple occasions. But, once again, there is a mismatch between the facts Plaintiff alleges and her legal theory. The "extreme verbal abuse" Plaintiff has alleged was ongoing, essentially from the beginning of Nickerson's work at Rock Hall until her transfer to Chestertown. She has not alleged any facts suggesting that Nickerson's verbal abuse changed in any way in response to any of her complaints or charges or that it dissuaded her from making or supporting a charge of discrimination, as she continued to make such complaints throughout her tenure. In addition, as noted above, Plaintiff has not pleaded constructive discharge.

Plaintiff's final suggested "adverse employment action" is her transfer to a "less desirable position." Her Complaint, however, does not allege facts suggesting that Chestertown is "less desirable."[2] Moreover, the Complaint is clear that the transfer was voluntary. It alleges that the

---

[2] In her opposition, Plaintiff alleges that the Chestertown Post Office was less desirable because it was not in her hometown. ECF 17-1 at 15. That fact does not appear in the Complaint, and Plaintiff cannot amend her Complaint through her motions briefing. Also, in both her Complaint and opposition, Plaintiff alleges that her work hours changed in Chestertown, but in neither place does she suggest that the change was adverse or explain why it was less desirable, either objectively or subjectively. Additionally, in her opposition, Plaintiff alleges that Nickerson knew that his paid administrative leave for the lost property occurred as a result of a complaint she had made. ECF 17-1 at 14. That fact also is not alleged in the Complaint, which neither mentions Plaintiff's notifying management about the lost property nor Nickerson's awareness that she had made such a complaint. Finally, Plaintiff alleges in her complaint that her supervisor at the Chestertown Post Office attempted to discipline her for the alleged conduct of others. The complaint contains no allegations, however, suggesting that the MPOO would have known Plaintiff's new supervisor would do so such that this Court could infer a retaliatory intent in offering the transfer.

MPOO "offered to transfer [Plaintiff] to another office until USPS got it 'straightened out'" and that Plaintiff "agreed to a temporary transfer to the Chestertown Post Office." As the Fourth Circuit has explained, "If an employee voluntarily requests a transfer, and the employer agrees to it, there is no actionable adverse action." *Laird v. Fairfax Cnty.*, 978 F.3d 887, 894 (4th Cir. 2020). Particularly because Plaintiff alleges no facts explaining why Chestertown would be a less desirable assignment, she has not plausibly alleged that her agreed temporary transfer occurred in retaliation for any of her charges or complaints.

It is clear that Plaintiff has amply pleaded facts stating a viable claim for hostile work environment and harassment, explaining Defendant's decision not to seek dismissal of that count. But her remaining legal claims do not comport with the facts she has alleged, making dismissal of those claims appropriate.

IV. **CONCLUSION**

For the reasons set forth above, Defendant's Partial Motion to Dismiss, ECF 13, is GRANTED and Plaintiff's constructive discharge and retaliation claims are dismissed without prejudice. The Clerk will also be directed to substitute David Steiner for Louis DeJoy and to dismiss the remaining named defendants. A separate Order follows.

Dated: February 9, 2026                              /s/
                                         Stephanie A. Gallagher
                                         United States District Judge